UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| STEPHEN O. NICELY, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: 3:05-cv-04 |
| | ) | (VARLAN/SHIRLEY) |
| VIRGINIA LEWIS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by petitioner Stephen O. Nicely[1] ("Nicely"). The matter is before the Court on the respondent's answer to the petition, Nicely's response, and his supplements to the record. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action **DISMISSED WITH PREJUDICE**.

I.  Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge

---

[1] Petitioner's name is spelled interchangeably as "Stephen" and "Steven" throughout the record. The Court will use the spelling of "Stephen" as used by petitioner in his habeas petition.

is to dispose of the case as justice dictates. If the record shows conclusively that Nicely is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Factual Background

The respondent has provided the Court with copies of the relevant documents as to Nicely's direct appeal and post-conviction proceedings. [Doc. 3, Notice of Filing Documents, Addenda 1-14]. Nicely was convicted by a jury, in the Circuit Court of Knox County, Tennessee, of rape of a child and aggravated sexual battery. He was sentenced to concurrent terms of imprisonment of 22 years and 11 years, respectively. The judgments of conviction were affirmed on direct appeal. *State v. Nicely*, No. 03C01-9805-CR-00174, 1999 WL 826029 (Tenn. Crim. App. Oct. 18, 1999) [Addendum 5].

The Tennessee Court of Criminal Appeals summarized the evidence against Nicely as follows:

> In the summer of 1994, N.B., the victim, the victim's mother, Wilma Faye Wynn, and the appellant lived in the Karns community of Knox County. Ms. Wynn and the appellant began their relationship around 1992. In 1994, they began living together. N.B. was eleven years old and entering the sixth grade at that time. Although the thirty-seven year old appellant and the victim's mother were unmarried, N.B. viewed the appellant as a "father figure." In September of 1995, the victim confided in a friend that she and the appellant had been involved in sexual activity. In January of 1996, the appellant was charged in a two count indictment with rape of a child and aggravated sexual battery.

At trial, she testified, providing no specific dates, that the "touchin' happened all the time" in his room, the living room, and the kitchen. She testified that the appellant had touched her vagina with his penis and his mouth. The victim admitted that she would go into the appellant's room because she liked the attention. She stated that during the incidents of abuse, she remained clothed but the appellant was unclothed.

The victim recounted that the first sexual encounter occurred when she and the appellant were watching television in his bedroom. The appellant began rubbing her back and eventually removed her bra and began rubbing her stomach and chest. Frightened, the victim left the room. The appellant followed her outside and told her that if she told they would both be "in trouble."

Another incident occurred in the living room, when the appellant digitally penetrated her vagina. She testified that on another occasion he put her hand on his penis and she masturbated him until he ejaculated. Yet, another offense occurred in the victim's brother's room. The appellant put his hands on her and asked if she had had sex standing up before. This offense ceased when the victim's mother returned home from work.

The victim testified that on or about September 3, 1995, the appellant got out of the shower and had a towel wrapped around him. The victim had entered his room to retrieve a towel for herself. The appellant pulled her onto the bed where they both began touching each other. The appellant then penetrated the victim's vagina with his penis. When she complained that it hurt, he stopped. She stated that she liked the appellant to fondle her; however, the penetration scared and hurt her.

Later that same day, the appellant took the victim and her brother to the lake. The appellant dropped her brother off at the bank with other children while he and the victim went riding in the boat. The appellant gave the victim a Valium for a headache. After entering a cove on the lake, the appellant gave the victim a beer. That evening, when the appellant and her mother were away at a concert, the victim drank some liquor, locked herself in the bathroom, and passed out. Her brother called Debbie, their father's girlfriend, who took the victim to her trailer in Powell. It was on this occasion that the victim related to Debbie her sexual encounters with the appellant. Debbie called the victim's mother and advised what the victim had told her.

A few days later, the victim spoke with the Department of Human Services (DHS). She told the DHS case worker that the appellant had only penetrated her once. However, she did tell DHS that he had touched her before. DHS referred the victim to a psychologist at St. Mary's Hospital. The victim stated that she was very unhappy at the time because "[e]verything came out." The victim remained at the hospital for nine days. After leaving the hospital, the victim was placed in Peninsula Lighthouse for further treatment for two months. Next, the victim was placed in PAASAC where she received continued counseling.

The victim stated that she had never been penetrated before the actions by the appellant. However, during the time that the appellant was abusing her, she was digitally penetrated by another boy while they were kissing.

On cross-examination, the victim stated that her mother drank heavily during the times of these offenses and they were experiencing various conflicts in their relationship. The victim's domicile fluctuated back and forth between living with her father and mother. She admitted telling the psychologist that she had provoked the appellant by grabbing his genitals and removing the covers from the bed in which he was lying. She admitted that her story had changed from the time she talked to DHS and her testimony in court.

The victim also told the psychologist that she smoked marijuana and that she heard voices. However, she denied telling the psychologist of any specific instances of alcohol or marijuana abuse. She stated that the entire time was very confusing for her, however, she "did not hallucinate and [was] not mental."

James Nicely, the appellant's brother, testified that he talked to the appellant on two occasions about his sexual involvement with the victim. The appellant told him that the victim was "comin' on to him." On the second occasion, the appellant asked for his help. The appellant related that the victim had pulled the towel off of him and climbed on top of him while he was asleep. When he awakened, there was a wet spot on the sheets. Further, the appellant related that he had performed oral sex on the victim at the lake.

Also, testifying for the State was Nancy Jackson, an employee of the Blount Memorial Emotional Health and Recovery Center, where the appellant had apparently submitted himself for evaluation and/or counseling. Unfortunately, the testimony of Ms. Jackson is not included in the record. An exhibit to her testimony includes the following interview notations: "she

touches/grabs him in an inappropriate way for [sic] past year ... states he allowed her to masturbate him ... I am really worried that I might be a child molester."

...

The defense presented the testimony of Dr. Jeffrey Davis, a clinical psychologist employed at St. Mary's Health System, who treated the victim. From his report, he testified that the victim and her mother had a "tumultuous" relationship and she felt abandoned by her father. The victim had reported using Valium, alcohol, and marijuana and attempts to overdose on drugs. She told the psychologist that she was experiencing auditory hallucinations in which she heard people swimming and laughing when she stared outside her window. At one point, she said that she saw a giant eraser chasing her around her school classroom. Moreover, she reported seeing "mannequin-like Indians" staring at her.

The victim told the psychologist that she felt close to the appellant because he took care of her mother. She acknowledged that she had been provocative toward the appellant and that she enjoyed the attention she received from him. The psychologist opined that possibly the victim had perceived the relationship as a means to strain the relationship between the appellant and her mother. Davis diagnosed the victim with major depression, "severe without psychotic features," alcohol and cannabis abuse, and post-traumatic stress disorder. The psychologist recommended that the victim be placed on medication, in-patient treatment, family intervention, and chemical dependency treatment. Although the psychologist did not feel that her hallucinations were valid in the "true psychotic sense," he felt they were a product of her imagination and fantasy.

Wilma Wynn, the victim's mother, testified that her daughter has a history of lying. Ms. Wynn stated that her daughter expressed much distaste for her new environment in Karns and blamed her mother for her father not being around. She related that she and the victim's father were not on good terms because he did not provide any support for his children. Ms. Wynn testified that her daughter had a habit of opening the shower door on people, removing covers from the bed while people were under them, and entering her bedroom. She stated that the appellant had asked her to lock the bedroom door when she left for work in the mornings. The appellant also began sleeping in blue jean shorts as opposed to the nude. She recounted an incident on

Valentine's Day when the appellant had bought her a ruby ring. The victim became extremely jealous and angry until the appellant also bought her a ring.

Ms. Wynn stated that the victim has told her on different occasions that the appellant sexually abused her. Then, on other occasions, the victim denied that the appellant abused her. Although her daughter was given a pregnancy test upon admission to the hospital, no test was performed to determine whether the victim was sexually active.

Tiffany Wallace, a friend of the victim, presently incarcerated at the juvenile detention center, testified that the victim was a chronic liar. She stated that, prior to the victim's admission to Lighthouse, she and the victim were taking Valium, smoking marijuana, and drinking alcohol on a regular basis.

*State v. Nicely*, 1999 WL 826029 at **1-4 (footnotes omitted).

Nicely then filed a petition for post-conviction relief. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Nicely v. State*, No. E2003-01223-CCA-R3-PC, 2004 WL 15805631 (Tenn. Crim. App. July 15, 2004) [Addendum 12], *perm. app. denied, id.* (Tenn. Nov. 15, 2004) [Addendum 14].

In support of his petition for the writ of habeas corpus, Nicely alleges the following: (1) ineffective assistance of counsel at trial (24 instances); (2) ineffective assistance of counsel on appeal (5 instances); (3) ineffective assistance of counsel in post-conviction proceedings (14 instances); prosecutorial misconduct (22 instances); and bias of the trial court resulting in an unfair trial (14 instances). The respondent contends she is entitled to judgment as a matter of law based on procedural default with respect to many of Nicely's claims, and judgment as a matter of law based upon the findings of the Tennessee state courts as to the remaining claims.

III.   Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Nicely cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim

to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

The Court has reviewed the entire record of this case, including Nicely's brief to the Tennessee Court of Criminal Appeals on direct appeal of his conviction [Addendum 3] and his appellate brief on appeal from denial of post-conviction relief [Addendum 10]. In support of his habeas petition, Nicely alleges 22 instances of prosecutorial misconduct, none of which were presented to the Tennessee Court of Criminal Appeals, either on direct appeal or in post-conviction proceedings.

He also alleges 24 instances of ineffective assistance of counsel during trial, five instances of ineffective assistance of counsel on direct appeal, and 14 instances of ineffective assistance of counsel during post-conviction proceedings. In his brief on appeal from the denial of post-conviction relief, however, Nicely alleged only four instances (with subparts) of ineffective assistance of counsel. Four allegations set forth in the habeas petition were thus presented to the Tennessee Court of Criminal Appeals: (1) that trial counsel denied

8

Nicely his right to testify; (2) that trial counsel failed to challenge evidence of the victim's post-traumatic stress disorder; (3) that trial counsel failed to impeach the testimony of Nicely's brother based upon his criminal record; and (4) that trial counsel failed to investigate and learn that one of the jurors was friends with the victim's father.

Nicely further alleges 14 instances of improper rulings by an allegedly biased trial court which resulted in the denial of the right to a fair trial. Only one of those allegations, however, was presented to the Tennessee Court of Criminal Appeals. On direct appeal, Nicely alleged that the trial court erred in limiting cross-examination of the victim with reference to specific instances of prior sexual conduct.

The claims that Nicely failed to present to the Tennessee Court of Criminal Appeals, either on direct appeal or on appeal from the denial of post-conviction relief, are procedurally defaulted. Nicely argues his procedural default should be waived because it was the fault of his appointed post-conviction attorney. Attorney error will constitute cause to excuse procedural default only if it rises to the level of constitutionally ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See also McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Ineffective assistance of counsel, however, cannot violate the constitution where there is no Sixth Amendment right to counsel, *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982), and a post-conviction petitioner has no constitutional right to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first

appeal of right, and no further."); *Murray v. Carrier*, 477 U.S. at 488. Accordingly, Nicely's allegations of attorney error cannot suffice as "cause" to excuse his procedural default. *See Coleman v. Thompson*, 501 U.S. at 752. *See also Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 426 (6th Cir. 2003) ("To the extent Gulertekin may assert ineffective assistance of her post-conviction counsel as cause for the procedural default of her claim for ineffective assistance of trial counsel, she is barred by the fact that she has no constitutional right to such counsel.").

Likewise, Nicely's allegations of 14 instances of ineffective assistance of counsel during post-conviction proceedings cannot state a claim for habeas corpus relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

The Court will consider on the merits only those claims that were presented to the Tennessee Court of Criminal Appeals. With respect to those claims, the respondent contends she is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.  State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Nicely may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of,

clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Nicely must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Nicely has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this Court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the Court will consider Nicely's remaining claims for relief.

V. Discussion of Claims on the Merits

*A. Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Nicely must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id*. at 691-92.

12

In considering Nicely's claims of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals first noted that *Strickland v. Washington* established the standard for evaluating such claims. This Court has reviewed the record of Nicely's post-conviction proceedings [Addendum 6, Technical Record of Post-Conviction Proceedings; Addendum 7, Transcript of the Evidence]; the findings of the Tennessee courts as set forth below are supported by the record.

Nicely alleges in his habeas petition that his trial attorney inappropriately advised him not to testify and failed to inform him of the disadvantages of not testifying. In post-conviction proceedings, Nicely alleged that his attorney denied him the right to testify. In considering that claim, the Tennessee Court of Criminal Appeals correctly summarized counsel's testimony during the evidentiary hearing as follows:

> He said he did not want the petitioner to testify because of his drug history, his demeanor, and because when preparing him for cross-examination, the petitioner always used the victim's provocation as justification for the offenses. He said he told the petitioner that he had an absolute right to testify and would call him to the stand if that was his decision. He said the main problem with the petitioner testifying was that he did not deny the allegations.

*Nicely v. State*, 2004 WL 1580563 at *3.

The appellate court then determined that Nicely was not entitled to relief on this claim.

> With regard to the petitioner's claim that his attorney refused to let him testify, the post-conviction court accredited the trial attorney, who testified that he told the petitioner that he had an absolute right to testify and that he would put the petitioner on the stand if that was what he decided. He said, however, that he advised the petitioner not to testify because he would still be guilty using his victim provocation justification for the offenses. He said the petitioner's demeanor and his drug history would have also damaged his case if the petitioner had decided to testify. Moreover, during the petitioner's

13

> testimony at the post-conviction hearing, he never claimed that his attorney refused to let him testify. He testified that his attorney said that he should not testify because of his prior drug convictions, which made sense to the petitioner at the time. The evidence shows that the petitioner's trial attorney did not refuse to allow the petitioner to testify.

*Id.*, 2004 WL 1580563 at *5.

As noted, the findings of the Tennessee Court of Criminal Appeals are supported in the record. Nicely's attorney did not refuse him the right to testify. In fact, when counsel announced to the trial court that Nicely would not testify, the court specifically asked Nicely if he agreed with that decision and he answered "Yes, sir, very much." [Addendum 2, vol. III, p. 290]. To the extent Nicely is now alleging counsel's advice not to testify was deficient, Nicely has procedurally defaulted that claim.

Nicely next alleges that his attorney was ineffective for introducing expert testimony concerning post-traumatic stress disorder, without filing a motion to limit the expert's testimony to exclude rape trauma. At trial, the defense called Dr. Jeffrey Davis, a clinical psychologist who treated the victim. Dr. Davis testified as to the victim's relationship with her mother and father, her drug and alcohol use and attempts to overdose, her hallucinations, and her provocative behavior towards Nicely. [*Id.*, vol. III, pp. 216-226]. On cross-examination, Dr. Davis testified that the victim's depressive symptoms, including decreased sleep, decreased concentration, hopelessness, and helplessness were consistent with a child who had been sexually abused. [*Id.* at 228-232].

In post-conviction proceedings, Nicely alleged that his attorney should have challenged the admissibility of evidence of the victim's post-traumatic stress disorder. The

Tennessee Court of Criminal Appeals first noted that counsel should have objected to the testimony of Dr. Davis concerning the victim's post-traumatic stress disorder, because the Tennessee Supreme Court has held that expert testimony concerning the disorder is not admissible. *Nicely v. State*, 2004 WL 1580563 at *5 (citing *State v. Ballard*, 855 S.W.2d 557 (Tenn. 1993)). Nevertheless, the appellate court concluded that Nicely was not entitled to relief on this claim of ineffective assistance of counsel because he had not demonstrated prejudice.

> Given the substantial evidence presented at trial, however, including the petitioner's admission to a nurse that he allowed the victim to masturbate him, we believe that even if the attorney had objected and the jury had not heard testimony about the victim's post-traumatic stress disorder, the petitioner would still have been found guilty. The petitioner has not shown that trial counsel's failure to object to the testimony of Dr. Davis at trial prejudiced him to the extent of a reasonable probability that it affected the jury's verdict.

*Id*.

This Court agrees. Dr. Davis's testimony, in light of the evidence against Nicely, did not affect the jury's verdict. To the extent Nicely claims that counsel should have filed a motion to exclude testimony concerning rape trauma, he has procedurally defaulted that claim.

Nicely further alleges that his trial counsel failed to adequately investigate the case and prepare for trial, in that he failed to impeach James Nicely, his brother who testified for the State, through the use of James Nicely's criminal record, and failed to discover that a juror was friends with the victim's father. The Tennessee Court of Criminal Appeals

concluded that Nicely failed to demonstrate ineffective assistance of counsel based upon failure to investigate and prepare for trial.

> With regard to the petitioner's claim that his attorney failed to investigate and prepare adequately for trial, his trial attorney testified that he explained the possible sentences the petitioner might receive if he were to be convicted and advised the petitioner to plead guilty. He stated that once the petitioner decided to go to trial, his strategy was to show that the victim was confused and lied because she was abusing drugs. He said that he met with the petitioner several times and that he explained possible defenses and problems with the case. He said he interviewed each defense witness twice, explored all possible defenses and was prepared for trial. We conclude that the petitioner has failed to show that his attorney was deficient by failing to prepare and investigate the case.

*Nicely v. State*, 2004 WL 1580563 at *5.

The Court has reviewed the transcript of Nicely's pre-trial motion hearings and his trial. [Addendum 2, vol. I-IV, pp. 1-341]. Based upon the record, the Court agrees that Nicely failed to demonstrate ineffective assistance of counsel in this regard.

James Nicely testified that his brother had told him about the victim "comin' on to him." [*Id.*, vol. II, p. 166]. He also testified that Nicely told him that he and the victim had oral sex on the day they were at the lake. [*Id.*, vol. II, p. 168-169]. Nicely does not state his brother's crime. Nevertheless, while it is true that a witness's credibility can be impeached by showing that the witness has been convicted of a crime, in this case it does not appear that James Nicely's alleged criminal history would have affected the jury's reception of his testimony regarding his brother's statement. In addition, there is nothing in the record, other than Nicely's self-serving statement, to suggest that a juror was friends with the victim's father.

16

Based upon the foregoing, this Court concludes that the determinations of the state court that Nicely received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*.

### B. Trial Court Error / Cross-Examination of Victim

At a pretrial motion hearing, Nicely sought permission to cross-examine the victim at trial as to statements she made to DHS case workers, specifically that she had been involved with heavy petting and digital penetration with fourteen year old boys. [Addendum 2, Transcript of the Evidence, vol. I, pp. 20-21]. The court considered the motion during another pretrial hearing, during which the victim denied that she had been involved in digital penetration with boys, but admitted that on one occasion a friend digitally penetrated her after they had kissed. [*Id.*, vol. I, pp. 91- 100; vol. II, pp. 101-108]. After hearing the testimony and argument of counsel, the trial court allowed defense counsel to ask the victim the following: "'Have other individuals, other men, engaged in digital penetration with you?' And establish whether it's prior to or after Mr. Nicely had done that and on how many occasions. That will be the entire scope of the examination with regard to that." [*Id.*, vol. II, p. 116].

On direct appeal, Nicely alleged that the trial court erred in limiting the cross-examination of the victim concerning her prior sexual experiences, pursuant to Rule 412 of the Tennessee Rules of Evidence, commonly known as the "Rape Shield Law." Nicely claimed that he needed to prove her knowledge of sexual matters came from a third party

17

other than him and to dispel the notion that she was sexually naive. Nicely makes the same allegation in his habeas petition.

The Tennessee Court of Criminal Appeals summarized Nicely's claim as follows:

> In sum, he contends that the victim's sexual experiences with persons other than himself would have established that (1) the victim was not sexually naive; (2) she was sexually curious and aggressive toward the appellant; and (3) she obtained knowledge independently from the appellant to falsify the allegations against him.

*State v. Nicely*, 1999 WL 826029 at *6.

The appellate court first noted that Nicely's claim was grounded in the Confrontation Clause of the Sixth Amendment, which guarantees the right of the accused in a criminal prosecution "to be confronted with the witnesses against him." *Id*. The court further observed: "'[T]he main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*.'" *Id*. (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)) (citations and internal quotations omitted) (emphasis in original). The Tennessee Court of Criminal Appeals then concluded that Nicely's right to a fair trial was not violated by the trial court's limitation on cross-examination.

> The propriety, scope, manner and control of testimony and other evidence, including the scope of cross-examination, remains within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion. We conclude that the trial court achieved the purpose of the rape shield rule in maintaining "a balance between the paramount interests of the accused in a fair trial and the important interests of the sexual assault victim in avoiding an unnecessary, degrading, and embarrassing invasion of sexual privacy."

*Id*. (quoting Advisory Commission Comments, Tenn. R. Evid. 412) (other citations omitted).

This Court concludes that the determination, by the Tennessee Court of Criminal Appeals, that Nicely's right to confront and cross-examine the victim was not violated was neither contrary to, nor did it involve an unreasonable application, of federal law. *See, e.g., Gordon v. Morgan*, 27 Fed.Appx. 528, 530 (6th Cir. 2001) ("This circuit has consistently held that rape shield laws that exclude irrelevant evidence do not violate a criminal defendant's right of confrontation.") (citations omitted).

VI. Conclusion

The petition for habeas corpus relief will be **DENIED** and this action **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. All pending motions will be **DENIED** as **MOOT**. Nicely having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure. The Court will further **DENY** Nicely leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE